# COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34946-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | ORDER AMENDING |
| v. | ) | OPINION FILED |
| | ) | JULY 17, 2018 |
| COREY MICHAEL BURNAM, | ) | |
| | ) | |
| Appellant. | ) | |

IT IS ORDERED that the opinion filed on July 17, 2018, shall be amended as follows:

The first sentence in the second full paragraph on page 3 that begins: "Canine Deputy Jason Hunt . . . ." shall be deleted and the following shall be inserted in its place: "Deputy Jason Hunt arrived at the scene and began to track Mr. Burnam with his canine partner Gunnar."

PANEL:     Judges Lawrence-Berrey, Siddoway, Fearing

FOR THE COURT:

ROBERT LAWRENCE-BERREY
CHIEF JUDGE

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34946-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| COREY MICHAEL BURNAM, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — We review de novo whether a trial court's exclusion of defense evidence violated the accused's constitutional right to present a defense. The more the exclusion of defense evidence prejudiced the accused, the more likely we will find a constitutional violation. Where the excluded defense evidence has minimal or no relevance, we affirm the trial court's ruling.

Here, Corey Burnam sought to admit evidence that the woman he killed had four years earlier dated a man accused of murder and that she had hid the murder weapon. We agree with the trial court that this evidence had minimal or no relevance to Mr. Burnam's claim at trial that he feared serious injury or death. We therefore affirm.

FACTS

In January 2016, Mr. Burnam and Alicia Sweet were staying at the home of Norman Anderton and Pamela Schuman. One night, Mr. Anderton was at home and heard a few faint thumps from a bedroom, followed by a louder thump; he did not hear any voices. Mr. Anderton got up to investigate but the sound stopped, so he sat back down.

Shortly after, Mr. Burnam appeared with a knife in his hand and blood on his shoe. Mr. Burnam went to the kitchen sink and washed his hands and face in the sink but did not put the knife down. Mr. Anderton went to check the bedroom but could not enter because the door was partially blocked. He could see Ms. Sweet on the floor, covered in blood. Mr. Anderton returned to the living room and attempted to use his telephone to call law enforcement, but Mr. Burnam took the telephone from him after remarking, "'You're calling 911, aren't you?'" Report of Proceedings (RP) at 274.

Mr. Anderton left the home and got into his car to drive to a nearby relative's home. As he was leaving, he saw Mr. Burnam outside attempting to get into a blue truck owned by Ms. Schuman's father. Mr. Anderton arrived at the relative's home and called law enforcement.

Law enforcement arrived and unsuccessfully tried to revive Ms. Sweet. In the bedroom, law enforcement found a shotgun barrel that was covered with blood toward the breech end. Law enforcement found blood in several places in the bedroom and outside the home, including near the bedroom window. Meanwhile, Mr. Burnam attempted to gain entry to the home of a neighbor, who refused him.

Canine Deputy Jason Hunt arrived at the scene and began to track Mr. Burnam with his partner Gunnar. Deputy Hunt saw a person running down a nearby street and called out, but the man continued running and ducked behind a shed. Gunnar located Mr. Burnam underneath a nearby trailer and began to pull him out. As law enforcement pulled him out and arrested him, he exclaimed that Ms. Sweet had tried to kill him. Detective Kirk Keyser later performed a videotaped interview of Mr. Burnam. In this interview, Mr. Burnam claimed Ms. Sweet attacked him because she thought he had taken her heroin.

An autopsy revealed Ms. Sweet had dozens of cuts and blunt impact injuries all over her body, head, and hands. Of particular note was a blunt impact head injury that went through several layers of Ms. Sweet's scalp, described as two symmetrical circles that appeared to be from the breech end of a shotgun barrel. Ms. Sweet had five stab wounds to the right side of her neck. The majority of those stabs wounds were in the

same area of the neck and formed a wound that reached all the way to her cervical spine. In addition to hitting her spine, these stab wounds severed Ms. Sweet's jugular vein, typically a mortal injury on its own. In contrast, Mr. Burnam had a black eye, a cut on one of his left fingers, a cut on one of his right fingers, and a bite wound caused by Gunnar.

Toxicology tests revealed that Ms. Sweet had methamphetamine and marijuana in her system, but no heroin. Mr. Burnam had methamphetamine and marijuana in his system, but no heroin. Blood testing revealed that the shotgun barrel had bloodstains on the breech end and that nearly all of the blood was from Ms. Sweet. Only a trace and an unidentifiable component was from another person, and that trace blood was on the center of the barrel. Law enforcement never recovered the knife used in the homicide.

*Procedural history*

The State charged Mr. Burnam with first degree murder or, in the alternative, second degree murder and interfering with the reporting of domestic violence.

As trial approached, Mr. Burnam notified the court of his intent to testify on his own behalf in support of his self-defense claim and his intent to testify that Ms. Sweet had been involved in a prior homicide. Mr. Burnam claimed that this was character evidence and asked the court to analyze its admissibility under ER 404(b).

According to the record, the prior homicide occurred in December 2012.  Bud Brown allegedly murdered David Deponte.  According to the affidavit of facts, law enforcement learned that Ms. Sweet was dating Mr. Brown at the time.  Sometime after the homicide, Ms. Sweet briefly gave the firearm away and then attempted to get it back.  When law enforcement questioned her, she was evasive and misleading.  The State charged her with first degree rendering criminal assistance by means of concealing, altering, or destroying the gun.  The affidavit does not state or imply that any person other than Mr. Brown was involved in Mr. Deponte's killing.

Mr. Brown and Mr. Burnam are cousins.  Mr. Brown's homicide trial was set to begin a few days after Mr. Burnam killed Ms. Sweet, a material witness in that case.

Mr. Burnam made a lengthy offer of proof in support of his motion.  Mr. Burnam argued that the evidence would help establish the reasonableness of his fear of serious harm or death during his struggle with Ms. Sweet.  Mr. Burnam repeatedly asserted the jury should know that Ms. Sweet was involved with a homicide or capable of being involved with a person who had committed a homicide.

The court analyzed the issue under ER 404(b) and excluded all evidence of the Brown homicide case.

*Trial*

The State called witnesses who testified to the facts contained above. Once the State closed, Mr. Burnam had his opportunity to tell his side.

According to Mr. Burnam, the incident began when Ms. Sweet angrily accused Mr. Burnam of taking her drugs and then using her methamphetamine. He laughed at her, taunted her, and told her that he had not taken her drugs. Ms. Sweet then grabbed his nearby folding knife, stood up, and confronted him.

Mr. Burnam explained that he did not make eye contact with her because he did not want to provoke her. Nonetheless, Ms. Sweet took a quick swing at him with the knife, as if warming up. She swung again and nearly hit him in the face. She then grabbed him and stabbed him on the finger of his left hand.

Mr. Burnam explained that he then grabbed Ms. Sweet, and they both struggled for the knife. The struggle continued for 10 minutes. He told her he would let her go if she dropped the knife.

Mr. Burnam believed Ms. Sweet was stabbed at least once at this point. She eventually let go of the knife, and he shoved her away. He picked up the knife but did not stand up. Mr. Burnam claimed he was heavily bleeding from the cuts on his fingers at this point.

According to Mr. Burnam, Ms. Sweet grabbed a shotgun barrel, stood up, and struck him in the eye. He then became scared something was wrong and thought that she might kill him. He stood up and stabbed Ms. Sweet repeatedly in the neck. The two then struggled over the shotgun barrel. During the struggle, Mr. Burnam pushed the breech end and hit her twice on her forehead. They then collapsed on the floor. Mr. Burnam attempted to leave through the bedroom door but found it obstructed. He then climbed out the window.

Mr. Burnam admitted that he did not call out to Mr. Anderton for help during the 10 minute struggle. He claimed the reason he did not call law enforcement was that he was scared. He also admitted he had a conviction for making false statements to police.

Despite his testimony, the jury found Mr. Burnam guilty of first degree murder and interfering with the reporting of domestic violence.

Mr. Burnam appealed.

ANALYSIS

Mr. Burnam contends the trial court excluded highly probative evidence relevant to his self-defense claim, which violated his right to present a defense. He also claims that the court used the incorrect legal analysis and that precedent demanded the court to

admit the evidence. The State's main theory in response is that Mr. Burnam's offer of

proof was inadequate to establish the relevance of the evidence.[1] We agree.

A.     STANDARD OF REVIEW

This court generally reviews a trial court's evidentiary rulings for abuse of

discretion. *State v. Duarte Vela*, 200 Wn. App. 306, 317, 402 P.3d 281 (2017), *review*

*denied*, 190 Wn.2d 1005, 413 P.3d 11 (2018). But "[i]f the court excluded relevant

defense evidence, we determine as a matter of law whether the exclusion violated the

constitutional right to present a defense." *State v. Clark*, 187 Wn.2d 641, 648-49, 389

P.3d 462 (2017). The more the exclusion of defense evidence prejudiced the defendant,

the more likely we will find a constitutional violation. *State v. Jones*, 168 Wn.2d 713,

720-21, 230 P.3d 576 (2010).

---

[1] The State also argues that Mr. Burnam did not preserve for review the constitutional argument he now raises. The State correctly notes that Mr. Burnam did not argue to the trial court that he had a constitutional right to present the evidence he sought to present. In response, Mr. Burnam argues that the exclusion of evidence is a manifest error affecting a constitutional right and thus reviewable under RAP 2.5(a)(3).

Rather than base our decision on RAP 2.5(a)(3), we exercise our discretion to review the constitutional argument raised on appeal. *See State v. Blazina*, 182 Wn.2d 827, 834-35, 344 P.3d 680 (2015) (RAP 2.5(a) authorizes an appellate court to review an unpreserved error.).

B.      A DEFENDANT'S CONSTITUTIONAL RIGHT TO PRESENT A DEFENSE

Both the United States Constitution and the Washington Constitution guarantee the right to present testimony in one's defense. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Hudlow*, 99 Wn.2d 1, 14, 659 P.2d 514 (1983). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). "A defendant's right to an opportunity to be heard in his defense, including the rights to examine witnesses against him and to offer testimony, is basic in our system of jurisprudence." *Jones*, 168 Wn.2d at 720. "Evidence that a defendant seeks to introduce 'must be of at least minimal relevance.'" *Id.* (quoting *State v. Darden*, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)). Defendants have a right to present only relevant evidence with no constitutional right to present irrelevant evidence. *State v. Gregory*, 158 Wn.2d 759, 786 n.6, 147 P.3d 1201 (2006). If relevant, the burden is on the State to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial. *Darden*, 145 Wn.2d at 622.

In considering a claim of self-defense, the jury must take into account all of the facts and circumstances known to the defendant. *State v. Allery*, 101 Wn.2d 591, 594-95, 682 P.2d 312 (1984). Because the "'vital question is the reasonableness of the

9

defendant's apprehension of danger,'" the jury must stand "'as nearly as practicable in the shoes of [the] defendant, and from this point of view determine the character of the act.'" *State v. Wanrow*, 88 Wn.2d 221, 235, 559 P.2d 548 (1977) (quoting *State v. Ellis*, 30 Wash. 369, 373, 70 P. 963 (1902)). Thus, such evidence is admissible to show the defendant's reason for fear and the basis for acting in self-defense. *State v. Walker*, 13 Wn. App. 545, 549, 536 P.2d 657 (1975).

Evidence of a victim's violent actions may be admissible to show the defendant's state of mind at the time of the crime and to indicate whether he had reason to fear bodily harm. *State v. Cloud*, 7 Wn. App. 211, 218, 498 P.2d 907 (1972) (quoting *State v. Adamo*, 120 Wash. 268, 269, 207 P. 7 (1922)). Thus, a defendant "may, in addition to the character evidence, show specific acts of the [victim] which are not too remote and of which [the defendant] had knowledge at the time of the [crime] with which he is charged." *Adamo*, 120 Wash. at 271. "Evidence of specific acts may be admissible for the limited purpose of showing whether the defendant had a reasonable apprehension of danger." *State v. Fondren*, 41 Wn. App. 17, 25, 701 P.2d 810 (1985).

C. NO ERROR FOR EXCLUDING IRRELEVANT EVIDENCE

Mr. Burnam argues that the proffered evidence was highly relevant. We first review his offer of proof.

An offer of proof should (1) inform the trial court of the legal theory under which the offered evidence is admissible, (2) inform the trial judge of the specific nature of the offered evidence so the court can judge its admissibility, and (3) create an adequate record for appellate review. *State v. Negrin*, 37 Wn. App. 516, 525, 681 P.2d 1287 (1984) (quoting *Mad River Orchard Co. v. Krack Corp.*, 89 Wn.2d 535, 537, 573 P.2d 796 (1978)).

Mr. Burnam's offer of proof failed to inform the trial judge of the specific nature of the offered evidence. Mr. Burnam's offer of proof was lengthy but repeatedly vague on the specific nature of the offered evidence:

> So the facts are that Mr. Burnam knows Ms. Sweet to be associated with Bud Brown, who was alleged to have committed a homicide. Ms. Sweet's involvement that she pled guilty to was the providing of a firearm. I think that—and I don't want to overstate the law enforcement's position in the Bud Brown homicide, but I believe that law enforcement was under the impression or thought that she had been more involved, in fact, that she may have even been there and been a participant.
> What Mr. Burnam knows is that Bud Brown is his cousin, is that Ms. Sweet and Mr. Brown were involved in this situation and that he has some direct knowledge of her involvement in that situation. Where that all comes to fruition is what was Mr. Burnam thinking on that night.

RP at 209. Mr. Burnam continued to assert that the jury should know that Ms. Sweet was involved with or capable of being involved with a homicide. He continued,

11

> Rendering criminal assistance is important because of what it was rendering criminal assistance to. Mr. Bud Brown is not a very nice guy and he has several investigations in relation to other homicides. The fact that Ms. Sweet associated with him and was involved in one of these homicides is something that I believe the jury gets to know for the sole purpose of what's going through Mr. Burnam's mind on that night.

RP at 211.

Mr. Burnam kept claiming that Ms. Sweet was involved in a homicide and was even more involved than law enforcement knew. However, he never said what acts she allegedly committed beyond disposing of the firearm, just simply that he thought she was capable of being involved in a homicide. He did not claim how he knew this information. The thrust of his lengthy argument focused on the fact that Ms. Sweet simply had been associated with a homicide four years earlier.

The record is clear that Ms. Sweet pleaded guilty to rendering criminal assistance by disposing of a firearm used previously in a homicide. Rendering criminal assistance is a nonviolent felony. RCW 9.94A.030(34), (55); RCW 9A.76.070. The mere fact that Ms. Sweet dated a man accused of murder and hid the murder weapon does not strongly imply that Ms. Sweet was violent. The prejudicial effect of excluding this questionable evidence is minimal. We conclude the trial court did not violate Mr. Burnam's constitutional right to present a defense when it excluded this evidence.

12

D.  *DUARTE VELA* IS DISTINGUISHABLE

Mr. Burnam relies heavily on *Duarte Vela*.  In that case, the State charged Duarte Vela with murdering Menchaca, and Duarte Vela claimed self-defense.  200 Wn. App. at 313.  The State moved to exclude evidence of Menchaca's prior bad acts, while Duarte Vela claimed the acts were probative of his self-defense claim because they would establish the reasonableness of his belief of serious harm or death.  *Id*.  The prior bad acts alleged were Menchaca's threats to kill the entire family, Menchaca's kidnapping of one of Duarte Vela's sisters, and Menchaca's repeated battering of another of Duarte Vela's sisters.  *Id*. at 313-16.  The trial court excluded the proffered evidence based on remoteness in time and its belief that the evidence was not believable.  *Id.*  The jury found Duarte Vela guilty.  *Id*. at 316.

On appeal, Duarte Vela claimed a violation of his right to present a defense, and this court reversed.  *Id*. at 327-28.  This court noted that the specific bad acts were highly probative of Duarte Vela's claim of self-defense and that the trial court could not exclude such highly probative evidence simply because it believed the evidence was weak or false.  *Id*. at 320-21.

Duarte Vela's case is distinguishable.  In that case, Duarte Vela sought to introduce evidence of violent acts, known to him through his family members or

13

observations: Menchaca beat one of Duarte Vela's sisters, kidnapped another sister, and made threats to kill the family. These purported acts are obviously violent, *and* Duarte Vela's offer of proof specified what he knew and how he knew it. In contrast, Ms. Sweet's association with an accused murderer and her guilty plea to a nonviolent felony committed independent from the homicide are not specific acts of violence.

As further distinguished from *Duarte Vela*, the trial court here allowed the accused to testify in detail about the struggle, his belief that he was fighting for his life, and to fully argue his self-defense theory to the jury. The jury considered Mr. Burnam's testimony, the disparity of injuries, his failure to call out to Mr. Anderton for help, his implied threat to Mr. Anderton during the latter's attempt to call police, and his flight from the crime scene. In light of all of the evidence, the jury did not believe Mr. Burnam.

We conclude that the trial court did not violate Mr. Burnam's right to present a defense by excluding evidence of Ms. Sweet's peripheral role in the homicide.

*Appellate costs*

Mr. Burnam asks this court to not award appellate costs in the event the State substantially prevails. The State has substantially prevailed. In accordance with RAP 14.2, we defer the question of appellate costs to our commissioner or clerk/administrator.

No. 34946-2-III
*State v. Burnam*

Affirmed.

Lawrence-Berrey, C.J.

WE CONCUR:

Siddoway, J.

Fearing, J.

15