**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

STATE OF WASHINGTON,

                    Respondent,

        v.

JESSE JAMES KOTTENBROCK,

                    Appellant.

No. 79009-9-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, C.J. — Jesse Kottenbrock appeals his conviction for assault in the second degree with a deadly weapon, arguing that the trial court violated his constitutional right to present a defense by excluding evidence offered to support his self-defense claim. Kottenbrock also argues for the first time on appeal that the trial court abused its discretion in imposing a discretionary legal obligation (LFO). We hold that the trial court properly excluded the evidence in question without infringing on Kottenbrock's right to present a defense. We decline to reach the LFO challenge. Accordingly, we affirm.

I.

Jesse Kottenbrock dated Amber Sunderland. Sunderland used to date Kent Schroeder. Kottenbrock and Schroeder did not get along.

On the evening of January 15, 2018, Kottenbrock drove to Cody Greening's house, where Sunderland was visiting. Greening was friends with Sunderland, but he

did not like Kottenbrock or Schroeder, and told both men that they were not welcome at his house.

When Kottenbrock arrived at Greening's house, Schroeder was parked outside. Schroeder testified that he had dropped off Sunderland at Greening's house and was waiting outside to drive her home. Kottenbrock testified that Sunderland had called and asked him to come pick her up. When Kottenbrock pulled up and honked his horn, Schroeder exited his car, approached Kottenbrock's car, and told Kottenbrock to leave Sunderland alone.

Schroeder testified that when Kottenbrock exited his vehicle, he "immediately starting swinging and attacking me." Schroeder said he dodged Kottenbrock's first punch from the right while stepping backwards and trying to put his cell phone in his pocket. Kottenbrock's left swing caught Schroeder in the chest, "but it didn't feel like a punch." Schroeder then noticed that Kottenbrock had a knife. When Kottenbrock's left hand came at Schroeder's stomach, Schroeder moved his right hand to block it, and was stabbed in the hand. When Sunderland and Greening came out of Greening's house, Schroeder yelled "I've been stabbed by Jesse." Sunderland got into Kottenbrock's car and asked Schroeder to leave. Schroeder got into his car, called 911, and moved his car to block the entrance to the cul-de-sac. Sunderland got out of Kottenbrock's car, told Schroeder to move his car, and swatted at him when he refused. Schroeder moved his car, and Schroeder remained on the scene to speak with police and to receive treatment for his wounds.

Police stopped Kottenbrock's car about 30 blocks from Greening's house. Kottenbrock denied any wrongdoing. Police observed blood on the rear bumper of

Kottenbrock's car. Kottenbrock denied cutting Schroeder and asserted that Schroeder "would cut himself and say that [I] did it." Although Kottenbrock asserted that the blood was "for damn sure" not Schroeder's, the blood was later identified as Schroeder's. Schroeder's blood was also found on a knife in Kottenbrock's car.

The State charged Kottenbrock with one count of assault in the second degree with a deadly weapon. At trial, Kottenbrock asserted that he feared Schroeder and acted in self-defense. He testified that when he exited his car and heard rapid footsteps approaching, he believed he needed to protect himself and Sunderland. When he saw Schroeder's fist coming at him, he pulled a knife out of his pocket as an "involuntary reaction." Kottenbrock started dodging and blocking Schroeder's swings, but Schroeder continued his "relentless" attack. He thought Schroeder would not stop unless he attacked back, so Kottenbrock swung his knife at Schroeder. He testified that he pulled away as soon as he felt contact, because he "wasn't trying to fatally wound or kill him." When asked why he initially told police he did not stab Schroeder, Kottenbrock testified that he was in "shock" and "couldn't think straight."

In support of his self-defense claim, Kottenbrock testified at trial that Schroeder had jealously stalked, harassed, and threatened him and Sunderland for five years, beginning when they started dating. He said Schroeder cyberbullied them, repeatedly stalked and harassed them in public, popped his car tires with a knife, and threw rocks at his windows while he was sleeping. Kottenbrock asserted that Schroeder's actions caused him severe anxiety, impacted his everyday activities, and made him fear for his life.

Kottenbrock also testified that he had called the police about Schroeder twice during the days leading up to the January 15 altercation. In the first incident, Schroeder confronted Kottenbrock and Sunderland in a grocery store parking lot, followed them home in his car, and continued escalating the confrontation until Kottenbrock called police. In the second incident, he and Sunderland were sleeping in his car when they heard a "huge crash." Kottenbrock saw Schroeder jump into his car and drive away. Upon finding "a huge boulder" next to his car, Kottenbrock called the police. The responding officer testified that Kottenbrock had called 911 to report that Schroeder had thrown rocks at his vehicle and that she advised him to seek a protection order if he felt unsafe.

To corroborate this testimony, Kottenbrock sought to introduce the police computer-aided dispatch (CAD) logs regarding these two incidents. He asserted that the logs showed he acted on his fear by calling police when he felt threatened by Schroeder. The court ruled that the probative value of the CAD logs was substantially outweighed by the danger of confusing the jury and presenting needlessly cumulative evidence. In so ruling, the court noted that the CAD logs contained Kottenbrock's own hearsay as to incidents that he was permitted to testify to.

Kottenbrock further testified that he and Sunderland petitioned the court for protection orders against Schroeder a few days prior to the January 15 incident. Sunderland's petition was granted, but Kottenbrock was arrested on the day before his scheduled hearing and his petition was not granted. He specified that his petition alleged that Schroeder had repeatedly threatened to beat him up or kill him. He further testified that he was aware of incidents Sunderland had raised in her petitions. To

4

further demonstrate the basis of his fear of Schroeder, Kottenbrock sought to introduce his and Sunderland's petitions for protection orders and the resulting orders. The court excluded this evidence because "it's simply his own out-of-court statement as to exactly what it is he's already going to testify to" and because its probative value was substantially outweighed by the needless presentation of cumulative evidence. The court also excluded Kottenbrock's protection order petition denial.

The trial court gave the jury a self-defense instruction. The jury rejected Kottenbrock's self-defense claim and convicted him of assault in the second degree with a deadly weapon. However, the court granted Kottenbrock's request for an exceptional sentence below the standard range, finding that "[t]he criminality of Mr. Kottenbrock's behavior, while not excused, was mitigated by Mr. Schroeder['s] actions" and that Schroeder was "to a significant degree, an initiator, willing participant, aggressor or provoker in the incident." The court sentenced Kottenbrock to a total of 24 months confinement for the assault and deadly weapon enhancement. Kottenbrock appeals.

II.

Kottenbrock asserts that the trial court foreclosed his right to present a defense by excluding multiple pieces of evidence offered to support his self-defense claim. This court generally reviews a trial court's evidentiary rulings for abuse of discretion. State v. Duarte Vela, 200 Wn. App. 306, 317, 402 P.3d 281 (2017). But we review a claim of a denial of the Sixth Amendment right to present a defense de novo. State v. Jones, 168 Wn.2d 713, 719, 230 P.3d 576 (2010); State v. Lizarraga, 191 Wn. App. 530, 551, 364 P.3d 810 (2015).

The right to defend oneself against accusations by the State is guaranteed by both the United States and the Washington Constitutions. U.S. Const. amend. VI; Wash. Const. art. 1. "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). "[I]n plain terms the right to present a defense [is] the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies." Taylor v. Illinois, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988) (quoting Washington v. Texas, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967)).

"In considering a claim of self-defense, the jury must take into account all of the facts and circumstances known to the defendant." State v. Burnam, 4 Wn. App. 2d 368, 376, 421 P.3d 977 (2018). Because the "'vital question is the reasonableness of the defendant's apprehension of danger,'" the jury must stand "'as nearly as practicable in the shoes of [the] defendant, and from this point of view determine the character of the act.'" Duarte Vela, 200 Wn. App. at 319 (quoting State v. Wanrow, 88 Wn.2d 221, 235, 559 P.2d 548 (1977)).

However, a defendant "does not have an unfettered right to offer [evidence] that is . . . inadmissible under standard rules of evidence." Taylor, 484 U.S. at 410. There is no constitutional right to present irrelevant evidence. Jones, 168 Wn.2d at 720. "Evidence is relevant if it has any tendency to make any fact that is of consequence to the case more or less likely than without the evidence." State v. Mee Hui Kim, 134 Wn. App. 27, 41, 139 P.2d 354 (2006). "[I]f relevant, the burden is on the State to show the

6

evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial." State v. Darden, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002). "The State's interest in excluding prejudicial evidence must be balanced against the defendant's need for the information sought, and only if the State's interest outweighs the defendant's need can otherwise relevant information be withheld." Darden, 145 Wn.2d at 622. "Accordingly, a defendant's interest in presenting relevant evidence may 'bow to accommodate other legitimate interests in the criminal trial process.'" Lizarraga, 191 Wn. App. at 553.

Kottenbrock first contends the trial court foreclosed his right to present a defense by excluding the CAD logs from Kottenbrock's two 911 calls in January 2018. He contends this evidence was necessary to show that he acted on his fear by calling the police. But Kottenbrock was permitted to testify extensively regarding these incidents. He was also permitted to introduce testimony from the officer who responded to the rock-throwing incident, and the CAD log was marked, identified, and discussed during her testimony. The court did not prevent Kottenbrock from testifying to any aspect of the incidents documented in the CAD logs. The court did not err in concluding that the probative value of the CAD logs was substantially outweighed by the danger of confusing the jury and presenting needlessly cumulative evidence under ER 403.

Kottenbrock further argues that the court violated his right to present a defense by excluding documents from his and Sunderland's protection orders. He contends that these documents were highly probative to show the subjective and objective reasonableness of his fear, as well as to rebut the State's implication that he acted out of anger. But the trial court permitted Kottenbrock to testify regarding the substance of the information in his own petition. Kottenbrock's petition and denial order were marked

7

and referred to during his testimony. Nor did the court err in excluding Sunderland's 2015 and 2018 petitions under ER 403. Sunderland did not testify at trial, and because the documents contain her version of events, they were inadmissible hearsay. The court properly limited Kottenbrock's testimony regarding Sunderland's petitions to events of which he had personal knowledge. As with the CAD logs, the court did not err in excluding these documents on the basis that their probative value was outweighed by the danger of presenting needlessly cumulative evidence.

Kottenbrock further asserts that the court erred in excluding certain out-of-court statements that he and Sunderland made during the January 15 incident, including (1) a phone conversation in which Sunderland allegedly called Kottenbrock to ask him to pick her up at Greening's house and (2) their statements to each other after the incident, asking and verifying that each was unharmed. He contends that these statements were highly probative because they showed the parties were aware Schroeder presented a threat and that they were concerned for each other's safety. We agree with the State that such statements were only marginally probative and that their exclusion did not violate Kottenbrock's right to present a defense.

Kottenbrock further argues that the court erred in excluding past incidents known to him of harassment, threats, and assaults by Schroeder against Sunderland and her family and friends. However, Kottenbrock was permitted to testify regarding certain threats to Sunderland of which he had personal knowledge, and it is not clear which specific incidents or evidence the trial court improperly prohibited him from testifying to. This argument is not sufficiently briefed to permit review. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Kottenbrock's reliance on Jones and Duarte Vela is misplaced. In Jones, a rape case, the trial court permitted the defendant to testify that the sexual contact was consensual, but prohibited him from presenting evidence that the contact took place at a "nine-hour alcohol and cocaine fueled sex party." 168 Wn.2d at 717-18. In Duarte Vela, a murder case, the trial court excluded evidence that while in prison the victim had previously threatened to kill Duarte Vela's family. Duarte Vela offered the evidence to demonstrate his reasonable fear of the victim—an element of his self-defense claim. 200 Wn. App. at 310-314. In both cases, the appellate court ruled that the trial court deprived the defendant of his right to present a defense because the excluded evidence was highly probative and central to the defendant's ability to explain his actions. Jones, 168 Wn.2d at 717, 724; Duarte Vela, 200 Wn. App. 320, 326. Here, in contrast, Kottenbrock had ample opportunity to fully present his theory of the case that he acted out of fear and in self-defense. The excluded evidence did not violate his right to present a defense.

III.

For the first time on appeal, Kottenbrock argues that the trial court erred in imposing a condition of community custody requiring him to "[p]ay supervision fees as determined by the Department of Corrections." He contends that RCW 10.01.160(3) prohibits the imposition of costs on an indigent defendant and that the court failed to conduct an individualized inquiry into his ability to pay.

RCW 9.94A.703(2)(d) provides that, "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [p]ay supervision fees as determined by the DOC." RCW 10.01.160(3), as recently amended, provides

that "[t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant." In State v. Blazina, 182 Wn.2d 827, 834, 344 P.3d 660 (2015), the Washington Supreme Court held that this statute requires "each judge to conduct a case-by-case analysis and arrive at an LFO order appropriate to the individual defendant's circumstances," requiring an individualized inquiry on the record. Thus, a Blazina inquiry is required for discretionary LFOs. State v. Clark, 191 Wn. App. 369, 373, 362 P.3d 309 (2015). Because supervision fees are waivable by the trial court, they are discretionary LFOs. State v. Dillon, __ Wn. App. 2d __, 456 P.3d 1199 (2020). We review a decision to impose LFOs for an abuse of discretion. State v. Clark, 191 Wn. App. 369, 372, 362 P.3d 309 (2015).

It is undisputed that Kottenbrock raises this issue for the first time on appeal. For this reason, the State asserts this court should decline review. Alternatively, the State contends that the supervision fee is not a "cost" as defined in RCW 10.01.160, and the court was therefore not required to inquire into Kottenbrock's ability to pay before imposing the fee.

An appellate court may refuse to review any claim of error which was not raised in the trial court. RAP 2.5(a). "A defendant who makes no objection to the imposition of discretionary LFOs at sentencing is not automatically entitled to review." State v. Blazina, 182 Wn.2d at 832. Issue preservation helps promote judicial economy by ensuring "that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals." State v. Robinson, 171 Wn.2d 292, 305, 253 P.3d 84 (2011). In

Blazina, the Washington Supreme Court exercised its RAP 2.5(a) discretion to reach the merits of the defendant's unpreserved LFO challenge due to the nationwide importance of LFO reform and to provide guidance to our trial courts. 182 Wn.2d at 830. The State contends that, unlike the LFOs at issue in Blazina, there is no pressing need to address the issue because the DOC supervision fee is a modest expense that can be waived by DOC if Kottenbrock is unable to pay. Under these circumstances, we decline to exercise discretion to waive Kottenbrock's failure to object below.

Affirmed.

_Mann, C.J._

WE CONCUR: