# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58390-9-II |
| Respondent, | |
| v. | |
| DAVID J. FERNANDEZ, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — David Fernandez appeals his conviction for assault in the first degree. First, he argues the trial court erred in excluding evidence of an active no-contact order between the victims. Second, he contends he should have been allowed to introduce such evidence to impeach the State's witness. Third, he argues he was denied a fair trial when a detective testified there was probable cause to charge him with assault. Finally, he alleges he received ineffective assistance of counsel, that these cumulative errors denied him a fair trial, and that the crime victim penalty assessment (CVPA) and deoxyribonucleic acid (DNA) collection fee should be stricken from his judgment and sentence. We affirm Fernandez's conviction, but we reverse and remand for the trial court to strike the CVPA and DNA collection fee.

FACTS

I.      BACKGROUND[1]

Fernandez and Jessica Allen were in a dating relationship. After about six months of dating, they were engaged. However, Fernandez broke up with Allen on March 19, 2021. Around 8:00 p.m. that night, Fernandez came to Allen's house to get the engagement ring back. Afterward, Allen went to a hotel that her ex-husband, Anthony Stanfield, and their two children were at. Allen brought the kids swimsuits so they could go swimming at the hotel, and Allen decided to stay there with them. Stanfield and Allen both had alcohol during this time. Later, Fernandez drove by Allen's house and texted her asking where she was and stated that he wanted to give her the ring back. Allen told Fernandez she was with Stanfield, and Fernandez became upset. Fernandez picked up his five-year-old son, who had been staying with his mother, to stay at Fernandez's home for the night. Fernandez and Allen called and texted each other, arguing, and on several instances, Stanfield responded to Fernandez instead of Allen.[2] Allen's family members contacted her and let her know that Fernandez had sent them messages calling her names.

Around 12:30 a.m., Allen decided she wanted to go see Fernandez and talk to him in person. According to Allen, she wanted to get the ring back and discuss their relationship. Allen testified that Stanfield accompanied her because he said it was not a good idea for her to go alone. Allen explained that she texted Fernandez on the way to his residence that she would be pulling up soon. She testified that she had Stanfield park the car away from Fernandez's house so Fernandez would not see Stanfield.

---

[1] This factual background is taken from trial testimony.

[2] These text messages are not in the appellate record, so our review is limited to testimony about them.

Allen walked to Fernandez's front door, rang the doorbell, and knocked several times. According to Fernandez, he was not expecting Allen to show up, his son was asleep, and he had been dozing on and off when the doorbell rang. Fernandez answered the door and spoke to Allen for several minutes before she came inside and they continued talking. They went back out on the porch. Then, Stanfield drove the car into the driveway and walked up to the front porch. Fernandez told Stanfield, "I got something for you." 8 Rep. of Proc. (RP) at 879. Then, Fernandez went into his house. Allen followed him inside and grabbed his arm and shirt to stop him, but Fernandez just continued walking to his room.

According to Allen, she then ran out the door, grabbed Stanfield, and they began walking to Stanfield's car to leave. Allen stated that Fernandez came out of the house with a baseball bat and struck Stanfield in the side of the face with it. Stanfield fell to the ground. Allen testified that, to distract Fernandez's attention from Stanfield, she began throwing rocks at Fernandez's car. Fernandez then struck her in the arm and the head with the bat, and she was rendered unconscious.

Fernandez called 911, and Allen and Stanfield were taken to the hospital to be treated for their injuries. Allen suffered a four-centimeter laceration to her forehead and scalp that required sutures and staples. Allen's arm was also bruised and was put in a splint. Stanfield suffered multiple facial fractures and had to have his jaw wired shut for three to four months.

Fernandez was charged with assault in the first and second degree of both Stanfield and Allen. The State alleged that Fernandez committed the assaults with a deadly weapon and that he and Allen were intimate partners.

3

II.   TRIAL AND SENTENCING

Prior to trial, the State sought to exclude evidence of Stanfield's criminal history.  The

State conceded that Stanfield had prior convictions for violations of protections orders and assault.

Fernandez's counsel did not object to excluding evidence of Stanfield's actual convictions.  He

did, however, object to the State's motion to exclude evidence of the active no-contact order

between Allen and Stanfield.  Fernandez's counsel argued this evidence was relevant because it

helped explain Fernandez's state of mind during the incident.

> Mr. Fernandez, when he realized Mr. Stanfield was there, became more afraid because he understood, A, this guy has a propensity for violence.  There is a no contact or he's not supposed to be with Ms. Allen.  Why is he here other than maybe to do me harm?
> . . . .
> Mr. Fernandez's mind that he was physically there.  He knew that he had been violent against Ms. Allen, the Court had ordered him to stay away from Ms. Allen, and Mr. Fernandez, when he saw Mr. Stanfield, wondered why is he here.  He's not even supposed to be with her.[3]

1 RP at 31, 35-36.

> The trial court disagreed and granted the State's motion concluding:

> I don't think [the no-contact order] has any relevance at all, but to the extent it has some novel amount of relevance, I think it's outweighed by its prejudicial value substantially for the reason[] that . . . the jury then says, well, but for the violation of the no contact order, none of this would have happened.

1 RP at 36.

At trial, Stanfield testified that his relationship with Allen was "generally [a] friendly one."

4 RP at 459.  Then, Fernandez again sought to introduce evidence of the no-contact order between

Allen and Stanfield to impeach Stanfield's testimony, because he argued the State opened the door

---

[3] The only information in the record regarding this no-contact order come from counsels' statements.

4

to this evidence. The trial court again did not allow Fernandez to bring up the no-contact order because it was a "collateral matter." 4 RP at 479.

Officer Cameron Olinger, who responded to the incident, testified that he observed no injuries on Fernandez. Olinger also stated that Fernandez told him Allen threw rocks at him, but he observed no rocks where Fernandez was standing.

Detective Greg Reiber, who also responded to the incident, testified that he saw two pools of blood on the ground when he arrived at the scene and that the rear and driver's windows of Fernandez's vehicle were busted out. Reiber also testified there were two baseball-sized rocks inside Fernandez's vehicle. Reiber stated he reviewed Ring video footage that captured Allen coming to Fernandez's door, going inside, and then coming back out and walking down the stairs with Stanfield towards their vehicle.[4] Reiber also testified that "there was probable cause to charge [] Fernandez with [domestic violence] assault and assault, so he was booked into jail." 8 RP at 818.

Fernandez testified that he struck Allen and Stanfield in self-defense after Stanfield rushed at him and Allen charged at him, attempting to throw rocks toward him.

A recording of the 911 call was played for the jury.[5] Photographs and videos of Allen's and Stanfield's injuries were also presented to the jury.

The jury found Fernandez guilty of assault in the first and second degree against Allen and determined that the assaults were committed with a deadly weapon. The jury also found that Fernandez and Allen were intimate partners. The jury, however, could not reach a verdict for the allegation of assaults on Stanfield, and the trial court declared a mistrial on those counts.

---

[4] The footage did not capture the actual incident. The Ring video is not part of the appellate record.

[5] This recording is also not part of the appellate record.

At sentencing, Fernandez pled guilty to assault in the second degree against Stanfield. For the assault in the first degree conviction against Allen and the assault in the second degree conviction against Stanfield, the trial court sentenced Fernandez to 165 months of total confinement, 54 months of community custody, and ordered him to have no contact with Allen or Stanfield. The trial court found Fernandez indigent and imposed a $500 CVPA and a $100 DNA collection fee.

Fernandez appeals.

ANALYSIS

Fernandez argues now on appeal that the trial court erred in excluding evidence of the active no-contact order between Allen and Stanfield, and that this exclusion violated his right to present a defense. We disagree.

I. EXCLUSION OF NO-CONTACT ORDER

A. Standard of Review

When reviewing trial court discretionary rulings that potentially implicate constitutional rights, we engage in a "two-step review process." *State v. Arndt*, 194 Wn.2d 784, 797-98, 453 P.3d 696 (2019). First, we review a trial court's evidentiary rulings for an abuse of discretion. *Id.* at 797. Then, we review de novo whether such evidentiary rulings "violated the defendant's right to present a defense." *Id.* An abuse of discretion occurs when a court's decision is "'manifestly unreasonable or based upon untenable grounds or reasons.'" *State v. Darden*, 145 Wn.2d 612, 619, 41 P.3d 1189 (2002) (quoting *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995)). "In our review for abuse of discretion, we may affirm the trial court on any basis that the record supports, including any theories 'established by the pleadings and supported by the proof,' even if these theories were not originally considered by the trial court." *Arndt*, 194 Wn.2d at 799 (quoting *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989)).

B.      The Exclusion of the No-Contact Order was Not an Abuse of Discretion

"[E]vidence a defendant seeks to admit 'must be of at least minimal relevance.'" *State v. Carballo*, 17 Wn. App. 2d 337, 345, 486 P.3d 142 (2021) (quoting *Darden*, 145 Wn.2d at 622). Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. In self-defense claims, "the jury must take into account all of the facts and circumstances known to the defendant." *State v. Burnam*, 4 Wn. App. 2d 368, 376, 421 P.3d 977 (2018). "[E]vidence of a victim's violent actions may be admissible to show the defendant's state of mind at the time of the crime and to indicate whether he had reason to fear bodily harm." *Id.* However, "[t]here is no right, constitutional or otherwise, to have irrelevant evidence admitted." *Darden*, 145 Wn.2d at 624.

Here, Fernandez sought to introduce evidence of the no-contact order between Stanfield and Allen.

Fernandez argued the existence of a no-contact order supported his self-defense theory that he was fearful of Stanfield who showed up at his house in violation of the no-contact order that protected Allen from Stanfield's violent tendencies. The trial court excluded any reference to the active no-contact order between Allen and Stanfield. The court stated that this evidence was irrelevant and "to the extent it ha[d] some novel amount of relevance, [it was] outweighed by its prejudicial value" in confusing the jury. 1 RP at 36.

Because Fernandez pled guilty to the assault of Stanfield at sentencing, Fernandez has to show that the no-contact order between Stanfield and Allen was relevant to his assault of Allen, the only conviction being appealed. While the no-contact order could have been relevant at trial to support Fernandez's theory of self-defense in showing his fear of *Stanfield*, Fernandez fails to

7

show how the no-contact order, which he argued showed Stanfield's violence toward Allen, is relevant to show his fear of *Allen*, the protected party of the no-contact order. Because the existence of the no-contact order does not make any material fact regarding Allen's assault more or less probable, we conclude this evidence is irrelevant.

Therefore, there was no abuse of discretion in the exclusion of the no-contact order.

C.     The Exclusion of the No-Contact Order Did Not Violate Fernandez's Right to Present a Defense.

Both the federal and state constitutions guarantee a criminal defendant's right to present a defense. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22; *State v. Jennings*, 199 Wn.2d 53, 63, 502 P.3d 1255 (2022). "*If . . . evidence is relevant*, the reviewing court must weigh the defendant's right to produce [such] evidence against the State's interest in limiting the prejudicial effects of that evidence to determine if excluding the evidence violates the defendant's constitutional rights." *Jennings*, 199 Wn.2d at 63 (emphasis added).

As explained above, evidence of the no-contact order between Allen and Stanfield is not relevant to Fernandez's self-defense claim against Allen. Therefore, we conclude the exclusion of this evidence did not violate his right to present a defense.

II.     IMPEACHMENT EVIDENCE

Fernandez argues the trial court erred in not allowing him to introduce evidence of the no-contact order and history of violence between Stanfield and Allen to impeach Stanfield once he opened the door to such evidence. We conclude if there was error, it was harmless.

A.     Standard of Review

The scope of cross-examination "is within the discretion of the trial court and is to be disturbed only upon abuse of discretion." *State v. Hudlow*, 99 Wn.2d 1, 22, 659 P.2d 514 (1983).

8

B.    Analysis

"Where impeachment evidence has been erroneously excluded, '[t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, [we can] nonetheless say that the error was harmless beyond a reasonable doubt.'" *State v. Orn*, 197 Wn.2d 343, 359, 482 P.3d 913 (2021) (alterations in original) (internal quotation marks omitted) (quoting *State v. Romero-Ochoa*, 193 Wn.2d 341, 348, 440 P.3d 994 (2019)).  An error is harmless if "we are convinced that the jury would have reached the same verdict absent the error." *Orn*,197 Wn.2d at 359.

Here, Fernandez sought to impeach Stanfield's testimony that his relationship with Allen was "generally [a] friendly one" by introducing evidence of Stanfield and Allen's history of violence and the no-contact order between them.  4 RP at 459.  We agree that evidence of the existence of a no-contact order protecting Allen from Stanfield contradicts Stanfield's assertion that he and Allen generally had a friendly relationship.  Admission of this evidence would allow the jury to infer Stanfield was not credible.  Stanfield's credibility is important because his account of the events corroborates Allen's.  Whether or not it is error, it was harmless.

Such an error would be harmless because other strong evidence supported both Stanfield's and Allen's accounts of events such that the trial court's error preventing the attack on Stanfield's credibility would not have resulted in prejudice that would alter the outcome of the trial.  The other evidence the jury could rely on was Allen's testimony that Fernandez struck her and Stanfield unprovoked.  This was corroborated by Olinger's testimony that there were no rocks where Fernandez was standing, in spite of Fernandez's assertion that his assault was in defense of Allen attempting to throw rocks at him.  The jury could also rely on Olinger's testimony that he observed no injuries on Fernandez, and the Ring video footage that Reiber testified showed Allen and

Stanfield walking towards their vehicle, away from where Fernandez was, consistent with Allen's description of the incident. Finally, the jury could also consider the photographs and videos documenting Allen's injuries from the baseball bat when Fernandez was uninjured. All of the foregoing corroborated Allen's version of events.

Therefore, even without the impeachment evidence, the jury would have reached the same conclusion such that any error did not prejudice Fernandez and was harmless.

III.     IMPROPER OPINION TESTIMONY

Fernandez argues for the first time on appeal that Reiber's testimony at trial regarding there being probable cause to charge Fernandez with assault constituted an improper opinion on his guilt.

A.      Standard of Review

The admission or exclusion of opinion testimony is within the discretion of the trial court. *State v. Johnson*, 49 Wn. App. 432, 437, 743 P.2d 290 (1987). We review such decisions for abuse of discretion. *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001).

B.      Analysis

Under RAP 2.5(a)(3), to raise this error for the first time on appeal, Fernandez must show that Reiber's testimony was a "manifest error affecting a constitutional right." *See State v. Kirkman*, 159 Wn.2d 918, 936, 155 P.3d 125 (2007). For the error to be "manifest," the defendant must make a plausible showing "'that the asserted error had practical and identifiable consequences [at] trial.'" *Id.* at 935 (internal quotation marks omitted) (quoting *State v. WWJ Corp.*, 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)); *State v. Walsh*, 143 Wn.2d 1, 8, 17 P.3d 591 (2001) ("'Manifest' in RAP 2.5(a)(3) means that a showing of actual prejudice is made.").

"Impermissible opinion testimony regarding the defendant's guilt may be reversible error because such evidence violates the defendant's constitutional right to a jury trial, which includes the independent determination of the facts by the jury." *Kirkman*, 159 Wn.2d at 927. To determine if testimony is an impermissible opinion, a court considers the circumstances of the case "including the type of witness involved, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact." *City of Seattle v. Heatley*, 70 Wn. App. 573, 579, 854 P.2d 658 (1993).[6]

As to the first factor, a police officer's testimony "carries an 'aura of reliability.'" *State v. Montgomery*, 163 Wn.2d 577, 595, 183 P.3d 267 (2008) (quoting *Demery*, 144 Wn.2d at 765). However, an officer's testimony on guilt has "low probative value because their area of expertise is in determining when an arrest is justified, not in determining when there is guilt beyond a reasonable doubt." *Montgomery*, 163 Wn.2d at 595.

Here, Reiber testified that "there was probable cause to charge [] Fernandez with [domestic violence] assault and assault, so he was booked into jail." 8 RP at 817. Fernandez argues this testimony "made clear his professional opinion that Fernandez was guilty as charged." Br. of Appellant at 36-37. However, this conclusion is unsupported by the testimony, as Reiber never commented on Fernandez's guilt beyond a reasonable doubt. He merely stated there was probable cause to charge Fernandez. As such, Reiber's statement was not impermissible opinion testimony because he offered no opinion on Fernandez's guilt. Moreover, even if Fernandez could show that

---

[6] *State v. Sutherby*, 138 Wn. App. 609, 617, 158 P.3d 91, 95 (2007), *aff'd on other grounds*, 165 Wn.2d 870, 204 P.3d 916 (2009), has language appearing to address our facts here: "In some instances, a witness who testifies to his belief that the defendant is guilty is merely stating the obvious, such as when a police officer testifies that he arrested the defendant because he had probable cause to believe he committed the offense. *See, e.g., State v. Kirkman*, 159 W[n].2d 918, 155 P.3d 125 (2007)." There are other cases that cite to *Sutherby* for this precise quote. However, *Kirkman* does not support this statement and the referenced language may even be dicta.

this testimony was erroneous, he cannot show that this testimony prejudiced him and had identifiable consequences at trial because the jury could still rely on Allen's testimony, evidence of Allen's injuries, the Ring video, and even Fernandez's own testimony, as explained above.

Therefore, we conclude there was no manifest constitutional error, and Fernandez has waived this alleged error by not objecting below.

IV.    INEFFECTIVE ASSISTANCE OF COUNSEL

Fernandez argues he received ineffective assistance of counsel because his counsel did not object to Reiber's statement that there was probable cause to charge him with assault. We disagree.

A.    Legal Principles

To prove ineffective assistance of counsel, a defendant must show (1) counsel's representation was so deficient it fell "below an objective standard of reasonableness" and (2) that deficiency prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (quoting and applying test from *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Failure to satisfy either requirement defeats the claim. *State v. Bertrand*, 3 Wn.3d 116, 128, 546 P.3d 1020 (2024). "The defendant must overcome 'a strong presumption that counsel's performance was reasonable.'" *Id.* at 130 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). Specifically, to show ineffective assistance of counsel for failure to object, "a defendant must show that an objection would likely have been sustained." *State v. Fortun-Cebada*, 158 Wn. App. 158, 172, 241 P.3d 800 (2010).

Further, prejudice requires showing that had counsel's performance not been deficient, "there is a reasonable probability . . . the result of the proceeding would have differed." *State v. Estes*, 193 Wn. App. 479, 488, 372 P.3d 163 (2016). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *In re Pers. Restraint of Crace*, 174 Wn.2d

12

835, 840, 280 P.3d 1102 (2012) (quoting *Strickland*, 466 U.S. at 694). Therefore, "prejudice exists when there is 'a probability sufficient to undermine [the court's] confidence in the outcome.'" *Bertrand*, 3 Wn.3d at 129 (alteration in original) (quoting *Strickland*, 466 U.S. at 694).

### B. Application

Here, Fernandez cannot show counsel's representation was deficient because, as discussed above, Reiber's testimony was not impermissible. As a result, an objection to this testimony likely would not have been sustained, and as such, Fernandez cannot show he received ineffective assistance of counsel.

Therefore, we conclude that Fernandez's representation was sufficient.

## V. CUMULATIVE ERROR

Fernandez argues that these alleged errors deprived him of a fair trial. We disagree.

Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 332, 868 P.2d 835 (1994); *State v. Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). Such is not the case here.

## VI. CVPA AND DNA COLLECTION FEE

Fernandez argues the CVPA and DNA collection fee should be stricken from his judgement and sentence. We agree.

Effective July 1, 2023, RCW 7.68.035(4) prohibits courts from imposing the CVPA on indigent defendants. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048, pet. for rev. filed, 102378-2 (2023). The legislature also amended RCW 43.43.7541 to require waiver of a DNA collection fee imposed before July 1, 2023 upon the defendant's motion. RCW 43.43.7541(2).

Fernandez was found indigent and requested the DNA collection fee imposed be struck. In light of these statutory changes, we remand with instructions to strike the CVPA and the DNA collection fee.

## CONCLUSION

We affirm Fernandez's conviction, but we remand for the trial court to strike the CVPA and DNA collection fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Cruser, C.J.

Price, J.