
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

STATE OF WASHINGTON,     )     No. 76369-5-I

    )

         Respondent,     )

    )

     v.     )

    )     PUBLISHED OPINION

SONG WANG,     )

         Appellant.     )     FILED: August 27, 2018

    )

VERELLEN, J. — Song Wang appeals his conviction of first degree felony murder for the death of Kittaporn Saosawatsri. Wang argues the State presented insufficient evidence that he caused the death of Saosawatsri in the course of or in furtherance of the crime of second degree robbery. The State presented evidence that Wang was in financial despair, he was targeting prostitutes, and he used force in stabbing Saosawatsri. When viewed in a light most favorable to the State and considered together with the State's evidence that Wang took Saosawatsri's property and attempted to sell an expensive handbag the day after the murder, a rational jury could find him guilty beyond a reasonable doubt of causing Saosawatsri's death in the course of or in furtherance of a robbery.

Wang challenges jury instruction 17, defining second degree robbery. We agree with the State's concession that jury instruction 17 is potentially confusing without a definition or clarification of "same transaction." But Wang fails to show a

manifest constitutional error relieving the State of its burden of proof when the evidence supports a reasonable inference that Wang had the intent to take property at the time he began to use force.

Wang also challenges the court's exclusion of evidence that the police failed to investigate other potential suspects. But Wang failed to make a sufficient offer of proof to obtain appellate review of this issue.

During trial, the lead detective testified, "I believe that Mr. Wang was responsible for the murder of Ms. Saosawatsri."[1] Because the testimony was offered in the context of the detective explaining the course of the investigation, the detective did not give an improper opinion as to Wang's guilt.

During closing argument the prosecutor argued, "I urge you to use your common sense. Look at the evidence. Weigh the testimony and render your decision. I'm confident you will do the right thing."[2] Wang did not object. Because the comment was limited to a single instance and was tempered by the immediately preceding statement instructing the jury to look at the evidence and weigh the testimony, Wang fails to show the prosecutor's comment was so flagrant and ill intentioned that a curative instruction could not have cured any prejudice.

Wang fails to establish he is entitled to a new trial based on cumulative error.

Therefore, we affirm.

---

[1] Report of Proceedings (RP) (Dec. 8, 2016) at 1211.
[2] RP (Dec. 14, 2016) at 1732-33.

2

## FACTS

Around 9:00 p.m. on March 31, 2015, when responding to a fire alarm, Bellevue firefighters found the body of Saosawatsri in her apartment. They also found a pile of smoldering clothes in Saosawatsri's closet. Saosawatsri was found kneeling over her bed with multiple superficial stab wounds on her front and back, along with defensive wounds on her arms. The medical examiner determined Saosawatsri died from two stab wounds to her chest. The police found jewelry, shoes, and handbags strewn around the kitchen and outside the closet.

Video surveillance in Saosawatsri's building showed a white Cadillac Escalade entering the building garage at 7:35 p.m. on March 31, 2015. The video showed a male, later identified as Wang, walking up the garage ramp. At the same time, Saosawatsri buzzed someone into the building. Video surveillance showed Wang entering the building and getting off the elevator on Saosawatsri's floor. Shortly before 9:00 p.m., video surveillance showed Wang exiting the garage with a large bag.

During the investigation, the police learned Saosawatsri was engaged in prostitution. Police connected Wang to a phone used to contact Saosawatsri the day of the murder.

The State charged Wang with first degree premeditated murder, first degree felony murder, and first degree arson.

Following the trial, the jury convicted Wang of first degree felony murder, first degree arson, and the lesser included offense of second degree intentional

murder under the first degree premeditated murder charge. During sentencing, the court vacated the second degree murder conviction to avoid double jeopardy.

Wang appeals.

## ANALYSIS

### I. Sufficiency of the Evidence

Wang contends there was insufficient evidence he caused Saosawatsri's death in the course of or in furtherance of a robbery to sustain a conviction for first degree felony murder.

"'The sufficiency of the evidence is a question of constitutional law that we review de novo.'"[3] To determine whether there is sufficient evidence to sustain a conviction, we review the evidence in the light most favorable to the State and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4] "'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'"[5]

A person is guilty of murder in the first degree when:

He or she commits or attempts to commit the crime of either (1) robbery in the first or second degree, (2) rape in the first or second degree, (3) burglary in the first degree, (4) arson in the first or second degree, or (5) kidnapping in the first or second degree, and in the course of or in furtherance of such crime or in immediate

---

[3] State v. Hummel, 196 Wn. App. 329, 352, 383 P.3d 592 (2016) (quoting State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016)).

[4] State v. Elmi, 166 Wn.2d 209, 214, 207 P.3d 439 (2009).

[5] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (quoting State v. Theroff, 25 Wn. App. 590, 593, 608 P.2d 1254 (1980)).

flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants.[6]

Here, the State alleges Wang caused Saosawatsri's death in the course of or in furtherance of second degree robbery.

A person commits robbery when:

[H]e or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.[7]

"Intent to deprive the victim of the property is a necessary element of the offense of robbery."[8]

"To establish that a killing occurred in the course of, in furtherance of, or in immediate flight from a felony, there must be an 'intimate connection' between the killing and the felony."[9] Specifically, the State must prove "that the death was a probable consequence of the felony and must specifically prove that the felony began before the killing."[10]

---

[6] RCW 9A.32.030(1)(c).

[7] RCW 9A.56.190.

[8] State v. Quillin, 49 Wn. App. 155, 164-65 741 P.2d 589 (1987).

[9] State v. Brown, 132 Wn.2d 529, 607-08, 940 P.2d 546 (1997).

[10] State v. Irby, 187 Wn. App. 183, 201, 347 P.3d 1103 (2015).

Wang argues the State presented insufficient evidence that the use of force related to his taking of Saosawatsri's property. He contends it is just as likely "that the taking of property was an afterthought to the killing."[11]

To support their respective arguments, the State and Wang heavily rely on State v. Allen.[12] Donovan Allen was convicted of aggravated first degree murder for the death of his mother. Our Supreme Court concluded the "considerable circumstantial evidence" was sufficient to establish Allen committed the murder in furtherance of a robbery and affirmed his conviction.[13] But after serving 16 years, newly discovered evidence exonerated Allen.[14] The exoneration calls into question the reliability of the circumstantial evidence in Allen. We conclude any analysis of sufficiency of the evidence here based on comparison to the facts in Allen is unwarranted.

In State v. Yates,[15] Robert Yates was convicted of two counts of aggravated first degree murder.[16] Our Supreme Court considered whether there was sufficient

---

[11] Appellant's Br. at 20.

[12] 159 Wn.2d 1, 147 P.3d 581 (2006).

[13] Id. at 9.

[14] See State v. Donovan Allen, 00-1-00235-9, Cowlitz County Superior Court, Order Vacating Conviction and Dismissing Case without Prejudice, December 1, 2015; Amended Order of Dismissal with Prejudice, July 11, 2016.

[15] 161 Wn.2d 714, 168 P.3d 359 (2007).

[16] See Irby, 187 Wn. App. at 204 ("There is no distinction between the analysis of the sufficiency of the evidence to support felony murder as charged and the similar aggravating circumstance. Both require that the killing occurred in the course of, in furtherance of, or in immediate flight from a felony.").

evidence that Yates committed the murders "'in furtherance of . . . [r]obbery.'"[17] In Yates, both victims were prostitutes and "[t]he State presented evidence that women engaged in prostitution typically require payment prior to the negotiated sexual act and that, because they are often robbed, they commonly hide their money in their shoes, brassieres, or underwear."[18] Both victims were found with their clothing disturbed and no cash on or near their bodies. The State also provided evidence that Yates had financial difficulties. The court concluded, "Viewed in the light most favorable to the State, the State's circumstantial evidence could have persuaded a rational trier of fact that Yates [committed the murders] in furtherance of robbery."[19]

Similarly, when the evidence in this case is viewed in a light most favorable to the State, there is a reasonable inference that Wang killed Saosawatsri with the intent to take her property.

The State presented evidence that Wang used a phone application to make calls via the Internet rather than a regular cellular service provider. Wang created the account he used to communicate with Saosawatsri on the day of the murder, March 31, 2015. On the same day, Wang contacted numerous medium-priced prostitutes. One of the State's law enforcement witnesses testified that escorts often have "large sums of cash" and "are less likely to report" a robbery.[20] This

---

[17] Yates, 161 Wn.2d at 754 (quoting RCW 10.94.020(11)(a)).

[18] Id. 754.

[19] Id. at 754-55.

[20] RP (Dec. 7, 2016) at 1172-74.

evidence supports a reasonable inference that Wang targeted a victim with property who was unlikely to call the police.

The State presented evidence of Wang's financial despair. On March 23, 2015, Wang's business partner texted Wang about people who were trying to locate Wang to collect debts. Wang responded, "Tell me a way to make fast money."[21] Wang's business partner also previously loaned Wang money to assist with his financial difficulties.

On March 21, 2015, Wang stole his ex-girlfriend's white Cadillac Escalade.[22] Wang's ex-girlfriend had previously helped Wang pay off a $17,000 business loan. The relationship ended after she discovered Wang's significant gambling debt. And Wang defrauded at least two other people.

The State also presented evidence concerning Wang's use of force and taking of Saosawatsri's property. The medical examiner testified that Saosawatsri had a number of superficial stab wounds on her front and back, along with defensive wounds on her arms. Saosawatsri had two fatal stab wounds to her chest. The police found jewelry, shoes, and handbags strewn around the kitchen and outside the closet. And Wang was seen on video surveillance leaving Saosawatsri's apartment with a full bag.

On April 1, 2015, the day after the murder, Wang contacted two Portland consignment stores and attempted to sell an expensive woman's handbag. At the

---

[21] RP (Dec. 13, 2016) at 1576.

[22] A white Cadillac Escalade was seen at Saosawatsri's apartment on the day of the murder.

first store, Wang turned down an offer of $405 for the bag "because it wasn't enough for the item."[23] At the second store, the manager refused to buy the handbag from Wang because she suspected it was stolen. Wang returned to the first store but refused to sell when he learned he would receive a check rather than cash.

When the evidence is viewed in a light most favorable to the State, there is a reasonable inference that Wang intended to take Saosawatsri's property at the time he walked into her apartment and before he began to use force culminating in her death. The State did not merely show Wang had financial difficulties. Rather, the State presented evidence of Wang's accelerating financial difficulties in the days leading up to the murder, his desperation to resolve these problems, and his targeting of prostitutes who were likely to have cash and were unlikely to call the police. Accordingly, we conclude the State presented sufficient evidence to support Wang's first degree felony murder conviction.

## II. Jury Instruction

Wang argues jury instruction 17, defining robbery, "relieved the State of its burden to prove all elements of the offense beyond a reasonable doubt and thereby violated [his] due process rights."[24]

We review errors of law in jury instructions under the de novo standard.[25] "Jury instructions are proper when they permit the parties to argue their theories of

---

[23] RP (Dec. 8, 2016) at 1354-55.

[24] Appellant's Br. at 25.

[25] State v. Barnes, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005).

the case, do not mislead the jury, and properly inform the jury on the applicable law."[26]

Here, jury instruction 17 provided:

> A person commits the crime of robbery in the second degree when he or she unlawfully and with intent to commit theft thereof takes personal property from the person or in the presence of another who has an ownership, or possessory interest in that property, against that person's will by the use or threatened use of immediate force, violence, or fear of injury to that person. The force or fear must be used to obtain or retain possession of the property or to prevent or overcome resistance to the taking, in either of which case the degree of force is immaterial. *The taking constitutes robbery, even if death precedes the taking, whenever the taking and a homicide are part of the same transaction.*[27]

Wang specifically challenges the final sentence of jury instruction 17. Instruction 17 mirrors WPIC 37.50.[28] Under WPIC 37.50, the final sentence is optional.

In general, as recognized in State v. Irby, "[c]hronology is important in proving that a murder was committed in the course of a felony."[29] "The State must present evidence that the death was a probable consequence of the felony and must specifically prove that the felony began before the killing."[30] The final sentence of WPIC 37.50 appears to be in tension with this principle.

---

[26] Id.

[27] Clerk's Papers (CP) at 291 (emphasis added).

[28] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (WPIC) 37.50, at 723 (4th ed. 2016).

[29] 187 Wn. App. 183, 201, 347 P.3d 1103 (2015).

[30] Id.

In <u>Irby</u>, the jury convicted the defendant of aggravated murder. This court decided there was insufficient evidence that the murder was committed in the course of or in furtherance of burglary. This court cited to <u>State v. Hacheney</u> when addressing the importance of chronology.[31] In <u>Hacheney</u>, the jury convicted the defendant of aggravated murder. Our Supreme Court considered whether there was sufficient evidence that the defendant committed the murder in the course of or in furtherance of arson. The court acknowledged, "for a killing to have occurred 'in the course of' arson, logic dictates that the arson must have begun before the killing."[32] But our Supreme Court also acknowledged the same logic does not necessarily apply to robbery:

> This is not say that a robber, for example, who kills his victim before committing the taking can necessarily avoid conviction for aggravated first degree murder. A killing to facilitate a robbery would clearly be "in the furtherance of" the robbery. RCW 10.95.020(11). And where the killing itself is the force used to obtain or retain the property, then the death can be said to be the probable consequence of the felony.[33]

Moreover, the final sentence of WPIC 37.50 was meant to address the situation where death precedes the taking and not the situation where death precedes the formation of the intent to rob. The comment to WPIC 37.50 cites <u>State v. Craig</u>[34] and <u>State v. Coe</u>[35] when addressing the use of force before

---

[31] 160 Wn.2d 503, 158 P.3d 1152 (2007).

[32] <u>Id.</u> at 518.

[33] <u>Id.</u> n.6.

[34] 82 Wn.2d 777, 514 P.2d 151 (1973).

[35] 34 Wn.2d 336, 208 P.2d 863 (1949).

11

property is taken.[36]

In Coe, our Supreme Court addressed Coe's contention "that one cannot be guilty of robbery if the victim is a deceased person."[37]

> As an abstract principle of law this is true, as essential elements of the crime of robbery would necessarily be lacking. However, that principle can not apply here, because the robbery and the homicide were all a part of the same transaction and the fact that death may have momentarily preceded the actual taking of the property from the person does not affect the guilt of the appellant in the commission of the crime charged.[38]

Under Coe, the fact that the victim is dead at the time of the taking does not automatically preclude a conviction for felony murder based on robbery.

In Craig, Craig was convicted of robbery and first degree felony murder. Craig argued the taking of the victim's property "could not be robbery because, the driver being dead at that point, it was not accomplished by force or by putting the deceased in fear."[39] The court stated:

> The burden was on the state to show the killing by the defendant and that it was done in connection with the robbery, as a part of the same transaction. It was not incumbent upon it to prove the state of mind of the defendant at the time of the killing.[40]

The comment to WPIC 37.50 mistakenly relies on this rationale from Craig for the incorrect proposition that "the State need not prove that the homicide was committed in order to take the person's property; a robbery is committed even if

---

[36] 11 WASHINGTON PRACTICE, *supra*, cmt. at 724.

[37] Coe, 34 Wn.2d at 341.

[38] Id.

[39] Craig, 82 Wn.2d at 779.

[40] Id. at 782.

the intent to steal was not formed until shortly after the person was dead."[41] But Craig does generally support the optional "same transaction" language in WPIC 37.50.

At oral argument, the State conceded WPIC 37.50 is potentially confusing without a definition or clarification of "same transaction." We agree. But the use of the optional language did not relieve the State of its burden to prove all the elements of robbery beyond a reasonable doubt. In jury instruction 17, as in the pattern instruction, the sentence immediately preceding the final sentence correctly identified that "[t]he force or fear must be used to obtain or retain possession of the property."[42] This accurate limiting statement alleviates any concerns that the instruction broadens the definition of robbery.

Wang fails to show a manifest constitutional error relieving the State of its burden of proof when the evidence supports a reasonable inference that Wang had the intent to take property at the time he began to use force. The mere possibility that a person might commit a homicide and after the fact form the intent to take property does not render WPIC 37.50 manifestly unconstitutional on these facts.

III. Exclusion of Evidence

Wang contends the trial court violated his right to present a defense when it excluded evidence of law enforcement's failure to investigate other suspects.

---

[41] 11 WASHINGTON PRACTICE, *supra*, cmt. at 724.

[42] CP at 291.

"In order to obtain appellate review of trial court action excluding evidence, there must be an offer of proof."[43] "An offer of proof must be sufficiently definite and comprehensive fairly to advise the trial court whether or not the proposed evidence is admissible."[44]

Here, "Wang wished to present evidence that Saosawatsri had made enemies by assisting law enforcement in investigating and prosecuting six participants in a prostitution ring in 2012."[45] Wang proffered a federal indictment filed against the six participants and a defense interview with Bellevue Detective Tor Kraft concerning Saosawatsri's involvement in the 2012 investigation. In the defense interview, Detective Kraft indicated that Saosawatsri was cooperative in the 2012 investigation.

Defense counsel asked Detective Kraft if he investigated any of the participants from the prostitution ring as possible suspects in Saosawatsri's murder. He replied,

> In the information I was provided when this initially occurred there was nothing that led me down that path. I wasn't able to find any connection. Of course that doesn't mean that that couldn't be a possibility. . . . [b]ut there was [an] overwhelming amount of information pointing to this one particular individual, the defendant.[46]

---

[43] Sutton v. Matthews, 41 Wn.2d 64, 67, 247 P.2d 556 (1952).

[44] Id.

[45] Appellant's Br. at 34.

[46] Pretrial Exhibit 17 at 19.

14

Detective Kraft also testified that any follow up was left to the lead detective, Detective Ellen Inman. And Wang failed to provide any evidence concerning what Detective Inman did or did not investigate in terms of potential other suspects.

Wang's proffer is insufficient to establish that the police failed to investigate the six participants. We conclude Wang failed to make a sufficient offer of proof to obtain appellate review of this issue.

## IV. Improper Opinion

Wang argues Detective Inman gave an improper opinion as to Wang's guilt.

"No witness, lay or expert, may testify to his opinion as to the guilt of the defendant, whether by direct statement or inference."[47]

> In determining whether such statements are impermissible opinion testimony, the court will consider the circumstances of the case, including the following factors: (1) the type of witness involved, (2) the specific nature of the testimony, (3) the nature of the charges, (4) the type of defense, and (5) the other evidence before the trier of fact.[48]

Testimony from police officers carries an "'aura of reliability.'"[49]

As a threshold matter, we do not accept any suggestion by the State that once the defense contends the police unfairly narrowed the investigation to Wang, the State was free to elicit opinion testimony concerning Wang's guilt. Here, during direct examination, Detective Inman twice testified, "I believe that Mr. Wang

---

[47] State v. Black, 109 Wn.2d 336, 348, 745 P.2d 12 (1987).

[48] State v. Montgomery, 163 Wn.2d 577, 591, 183 P.3d 267 (2008) (internal quotation marks omitted) (quoting State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001)).

[49] Id. at 595 (quoting Demery, 144 Wn.2d at 765).

15

was responsible for the murder of Ms. Saosawatsri."[50] In isolation, this answer, framed in the present tense, appears to be an opinion of guilt, but this testimony was offered in the context of Detective Inman explaining the course of the investigation. Specifically, Detective Inman was explaining the importance of phone records in identifying Wang as the suspect.

Wang cites State v. Montgomery.[51] There, the State charged Montgomery with possession of pseudoephedrine with intent to manufacture methamphetamine. At trial, one detective testified, "I felt very strongly that they were, in fact, buying ingredients to manufacture methamphetamine based on what they had purchased, the manner in which they had done it, going from different stores, going to different checkout lanes. I'd seen those actions several times before."[52] This testimony was offered in response to a question from the State about whether the detective had formed any conclusions based on his observation of Montgomery and a codefendant buying pseudoephedrine.

Another detective, who also witnessed the purchase, testified that the items purchased by Montgomery "were purchased for manufacturing."[53] This testimony was offered in response to a question from the State about why the detectives had not stopped Montgomery earlier. Initially, the detective responded, "It's always our hope that if the person buying these chemicals, that are for what we believe to be

---

[50] RP (Dec. 8, 2016) at 1211.

[51] 163 Wn.2d 577, 183 P.3d 267 (2008).

[52] Id. at 587-88.

[53] Id. at 588.

methamphetamine production, that we can take them back to the actual lab location."[54]

Our Supreme Court found the opinion testimony from the detectives was improper. The court determined neither the State nor the detectives "made any effort to avoid expressing their opinions that Mr. Montgomery possessed pseudoephedrine with the intent to manufacture methamphetamine."[55]

Here, unlike the witnesses in Montgomery, Detective Inman's testimony was offered to explain the progression of the investigation and how the police arrived at Wang as the lead suspect. We conclude Detective Inman did not offer an improper opinion as to Wang's guilt.

## V. Prosecutorial Misconduct

Wang contends a new trial is required because the State committed prosecutorial misconduct during closing argument.

"Allegations of prosecutorial misconduct are reviewed under an abuse of discretion standard."[56]

To prevail on a claim of prosecutorial misconduct, the defendant bears the burden of establishing that the conduct was both improper and prejudicial.[57] To establish prejudice, the defendant must show "a substantial likelihood that the

---

[54] Id.

[55] Id. at 592 n.6.

[56] State v. Brett, 126 Wn.2d 136, 174-75, 892 P.2d 29 (1995).

[57] State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

misconduct affected the jury verdict."[58] We evaluate the prosecutor's challenged statements "within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions."[59]

Here, the prosecutor argued in rebuttal, "I urge you to use your common sense. Look at the evidence. Weigh the testimony and render your decision. *I'm confident you will do the right thing*."[60] Wang did not object to the comment during trial. The "'failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury.'"[61]

Even assuming the prosecutor's comment was improper, Wang fails to establish prejudice. The potentially improper comment was limited to a single instance and the comment was tempered by the immediately preceding comments instructing the jury to look at the evidence and weigh the testimony.[62]

---

[58] In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012).

[59] State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

[60] RP (Dec. 14, 2016) at 1732-33 (emphasis added).

[61] Thorgerson, 172 Wn.2d at 443 (quoting State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

[62] See State v. Coleman, 74 Wn. App. 835, 839 & 841, 876 P.2d 458 (1994) (This court found the prosecutor's comment "telling the jury it would violate its oath if it disagreed with the State's theory of the evidence" was improper. But this court concluded the single comment was not prejudicial because it was "tempered by her immediately preceding comments that 'we cannot second guess you, and we will not second guess you.'").

We conclude the prosecutor's comment was not so flagrant and ill intentioned that a curative instruction could not have cured any prejudice.

## VI.  Cumulative Error

Finally, Wang argues cumulative error resulted in an unfair trial and requires reversal and remand.  "The cumulative error doctrine applies where a combination of trial errors denies the accused a fair trial even where any one of the errors, taken individually, may not justify reversal."[63]

For lack of a combination of trial errors, we conclude Wang is not entitled to a new trial based on cumulative error.

Therefore, we affirm.

WE CONCUR:

---

[63] In re Detention of Coe, 175 Wn.2d 482, 515, 286 P.3d 29 (2012).